## GROVER C. SMITH v. STATE.

No. A-2517.   Opinion Filed August 26, 1916.

(159 Pac. 668.)

1. **INSTRUCTIONS—Burden of Proof.** In a homicide case where defendant denied firing the fatal shot and there was evidence tending to show that the homicide was justifiable on the ground of self defense, the court instructed the jury in part as follows: "If they believe from the evidence beyond a reasonable doubt that at the time the said shooting was done, it was done in self defense as defined and set out in the instructions herein, you should find the defendant not guilty."

"The court instructs the jury: That if they believe from the evidence in this case beyond a reasonable doubt, that the defendant and one Charles Williams were just immediately prior to the firing of the shots which caused the death of the deceased, engaged in a difficulty, and that the deceased, armed with a deadly weapon voluntarily engaged in said difficulty and struck the defendant over the head and knocked him down, and that both the said Charles Williams and the deceased jumped or fell upon the defendant and all three while on the ground engaged in a scramble, and during the said scuffle or scramble the shots were fired which produced the death of the deceased; and shall further believe from the evidence, beyond a reasonable doubt, that defendant did not fire the shot that took deceased's life, that then and in that event, they should find the defendant not guilty."

Held, prejudicial error, as placing the burden of proof upon the defendant, and requiring the jury before finding for acquittal

to believe from the evidence beyond a reasonable doubt that the defendant was innocent.

2.   **BURDEN OF PROOF**—Degree of Offense. The burden does not rest upon the defendant, to establish even to a reasonable probability, the truth of an affirmative defense; if, upon the evidence both for the state and the defendant a reasonable doubt is created as to the guilt of the defendant, he is entitled to the benefit of it, and where the crime charged is distinguished into degrees the defendant is entitled to the benefit of that doubt, as well with respect to the degree of the crime as to every essential element of that degree, and in these respects the burden never shifts from the state to the defendant.

*Appeal from the District Court of Pawnee County; Conn Linn, Judge.*

Grover C. Smith, convicted of manslaughter in the first degree, appeals. Reversed.

*McNeill & McNeill,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., *R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J. Plaintiff in error, Grover C. Smith, herein referred to as defendant, was informed against for the crime of murder, alleged to have been committed on the 28th day of August, 1914, in Pawnee county, by killing one J. W. Brooks, by shooting him with a pistol.

Upon the trial, the jury by their verdict, found defendant guilty of manslaughter in the first degree and assessed his punishment at four years' imprisonment in the penitentiary.

Motion for new trial was duly filed, overruled and judgment was rendered in pursuance of the verdict on the 10th day of February, 1915.

From the judgment defendant appealed by filing in this court August 9, 1915, a petition in error with case-made.

The evidence shows that defendant was a farmer boy about twenty-one years of age, residing in Osage county near the east end of the bridge across the Arkansas river, at the town of

Ralston, in Pawnee county. That on the 28th day of August, 1914, a carnival company was exhibiting at Ralston, and in connection therewith the deceased, J. W. Brooks was operating what was known as a Hoop-Lah-Stand, and adjacent thereto his wife was conducting a game of chance, and with them was Charley Williams, a negro minstrel. That evening defendant came across the bridge to Ralston and went to the park where the carnival was being held, and after visiting several stands, came to the stand that the wife of the deceased was operating and purchased three rings and threw the same for the prizes; and one ring dropped over a prize clock; this prize, defendant claimed, but Mrs. Brooks claimed that the ring did not drop clear over the clock and she refused to give the clock to defendant; the deceased came up and had some conversation with defendant, but no difficulty arose; defendant then went on to the dance platform and from there to the merry-go-round; and then went towards the deceased's stand. As to what happened then, the evidence is conflicting.

The wife of the deceased, Mrs. Florence Brooks, testified that when defendant returned, a couple of Indians were quarreling with the negro, Williams, and her husband called to the negro to come away, and defendant then fired two shots at the negro and her husband rushed in between defendant and the negro and then all three clinched, and as they fell her husband was on top, and as she ran for help, she heard three more shots fired; that her husband died the next day as the result of a gunshot wound which passed through his body.

The negro, Williams, disappeared at the time of the tragedy, and did not testify as a witness.          ,

As a witness in his own behalf the defendant testified that he was passing the stand operated by the deceased and saw the negro, Williams, holding Tom Butler, an Indian boy by the coat collar, shaking him, and he told the negro to turn the boy loose, and the negro said, "maybe you want some of it," and drew a gun and shot at him, and someone struck him on the head,

cutting a large gash across the top of his head, knocking him senseless; and he did not regain consciousness for some time. that he never owned a gun or pistol and never carried a pistol, and did not have one at that time; that he did not shoot the deceased and did not fire any of the shots. ·

Several witnesses for defendant testified that when the defendant and the negro were fighting the deceased ran from his stand with a hatchet and struck defendant on the head with it; that during the melee several shots were fired; that officers arrived and pulled the deceased and the negro off of defendant, and defendant's head at the time was covered with blood.

A reversal is asked on account of alleged errors in the instructions given by the court in its charge to the jury.

In answer to plaintiff's in error brief, the Attorney General has filed a confession of error for the reason that under the instructions given the defendant was required to prove his defense beyond a reasonable doubt.

After a careful examination of the record, including the charge of the court, we are of opinion that the confession of error is well taken and should be sustained.

The latter part of instruction No. 14 was in the following language:

"But if they believe from the evidence beyond a reasonable doubt that at the time the said shooting was done, it was done in self-defense as defined and set out in the instructions herein, you should find the defendant not guilty."

The court also gave the following instruction to which an exception was taken:

"No. 18. The court instructs the jury. That if they believe from the evidence in this case, beyond a reasonable doubt, that the defendant and one Charles Williams were just immediately prior to the firing of the shots which caused the death of the deceased, engaged in a difficulty, and that the deceased, armed with a deadly weapon, voluntarily engaged in said difficulty and

struck the defendant over the head and knocked him down, and that both the said Charles Williams and the deceased jumped or fell upon the defendant and all three while on the ground engaged in a scramble, and during the said scuffle or scramble the shots were fired which produced the death of the deceased; and shall further believe from the evidence, beyond a reasonable doubt, that defendant did not fire the shot that took deceased's life, that then and in that event, they should find the defendant not guilty."

The effect of these instructions given by the court was to place the burden of proof of justifiable homicide in self-defense on the defendant. The law only requires the defendant to raise a reasonable doubt as to his guilt, if he does this he should be acquitted. The burden does not rest upon the defendant to establish event to a reasonable probability the truth of an affirmative defense; if upon the evidence, both for the state and the defendant, a reasonable doubt is created as to the guilt of the defendant, he is entitled to the benefit of it. The instructions quoted deprived the defendant not only of the presumption of innocence, but placed the burden on him to prove that he did not fire the shot that took the life of the deceased, and not only placed upon him the burden of proof, but required him to prove the same beyond a reasonable doubt.

See *McClatchers v. State,* 12 Okla., 152 Pac. 1139.

*Washmood v. United States,* 10th Okla. Cr. 254, 136 Pac. 184.

For the reasons stated we are of opinion that the defendant has not had that fair and impartial trial which the law guarantees to one accused of crime. It follows that the judgment of conviction should be reversed and a new trial ordered. Judgment reversed.

ARMSTRONG and BRETT, J. J., concur.