## DAVE SLATE v. STATE.

No. A-2991.   Opinion Filed November 19, 1918.

(175 Pac. 843.)

HOMICIDE—Instruction—Burden of Proof—Self-Defense. Instruction that, if jury found beyond a reasonable doubt that, when defendant killed deceased, the deceased was attempting to assault defendant, so as to endanger his life or do him great bodily harm, or if such danger then reasonably appeared to defendant, and he then killed deceased, it was in self-defense, and defendant should be acquitted, was erroneous, as putting burden of proof on defendant.

*Appeal from District Court, Carter County;*
*W. F. Freeman, Judge.*

Dave Slate was convicted of manslaughter in the first degree, his motion for new trial was overruled, and he appeals. Reversed.

*J. B. Champion* and *S. A. George,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, Dave Slate, hereinafter referred to as defendant, was informed against for the murder of R. R. Roland. The jury found him guilty of manslaughter in the first degree and fixed his punishment at imprisonment in the penitentiary for six years. Defendant's motion for a new trial having been overruled, and sentence imposed upon him, he brings the judgment here for review.

The uncontradicted evidence in the case shows that deceased and defendant had known each other for many years, and deceased and defendant were cultivating ad-

joining lands and lived near each other, and that in going to the field being cultivated by defendant the defendant went through the yard of the deceased; that on the day previous to the homicide, in the field in which deceased and defendant were working a difficulty arose between them, in which much abusive and insulting language was used; and that on the evening preceding the homicide, and subsequent to the difficulty in the field, the defendant went to the house of the deceased and got a plow, which he had previously sold the deceased; that on the morning of the homicide, succeeding the evening of the difficulty in the field, defendant went to the yard of the deceased, and there quarreling between the deceased and defendant was renewed, and divers threats made; that the deceased called for a gun, which was handed him by his daughter, and defendant ran off, and the deceased fired the gun, but the evidence is in conflict as to whether or not deceased fired the gun at or in the direction the defendant was going; and that, several hours after deceased fired the gun, deceased was instantly killed by a gunshot wound inflicted by the defendant.

The evidence further shows that there was no eyewitness to the tragedy, other than the defendant. The defendant testified that, when the deceased got his gun at deceased's home the morning of the day of the killing, defendant ran away through the bushes, and that the deceased "took deliberate aim and cracked down on him, and defendant heard the bullets going through the brush"; that deceased had threatened defendant's life, and that defendant knew deceased's reputation, and that it was that he was a turbulent and quarrelsome man; that defendant went home and picked up his gun to protect himself, and went to Mr. Goodman's, who resided near, and whom he wanted to

see about getting through Goodman's fence, so defendant could get to his crop, so as not to go by deceased's, and at that time he did not know that deceased had gone to Poolville; that he saw somebody coming down the road, but did not know it was deceased; that deceased overtook him, and when deceased got up to defendant he told defendant to stop, saying, "You dirty son of a bitch, you ain't got nerve enough to shoot;" then deceased ran his hands into his hip pocket and defendant shot; that, at the time deceased was coming over towards him, defendant did not know but what he had 40 guns, and defendant believed deceased intended to kill him.

The uncontradicted evidence is that the deceased was a much larger man than the defendant, and that an examination of the body of deceased immediately after his death disclosed that deceased had no deadly weapon upon his person, but a knife was found lying near his hand. There was evidence that, after the killing, defendant had made statements as to how the killing occurred that were contradictory to the circumstances surrounding the killing, as testified by defendant; said contradictory evidence tending to show that defendant had stated "that the deceased threw up his hands and begged defendant not to shoot him," and the defendant denied having made such contradictory statements. There was further uncontradicted evidence that defendant was a peaceable and law-abiding man, and that deceased was a "quarrelsome, fussy man.".

There is much other evidence in the case, which we deem unnecessary to recite, as the foregoing evidence is all that is necessary for an intelligent review of the case.

Among other instructions, the court gave the following:

"(13)   If you find beyond a reasonable doubt that, at the time the defendant shot and killed the deceased, the deceased was attempting to assault the defendant in such way and manner as to endanger the life of defendant or do him bodily harm, or if from all the facts and circumstances of the case you find it was reasonably apparent to the defendant at the time of said assault that he was about to be assaulted by deceased in such way and manner as that his life was in danger, or that great bodily harm was about to be done him by the deceased, under these circumstances the defendant shot and killed the deceased, then you are instructed that he did so in his own self-defense, and if you so find beyond a reasonable doubt, you will acquit him, and say by your verdict 'Not guilty.'"

To the giving of said instruction the defendant duly excepted.

There are various assignments of error, but, as the view we take of said instruction will necessitate reversal of the case, we deem it unnecessary to consider any error assigned, other than that in giving the said instruction. The said instruction puts the burden of proof upon the defendant, and the court committed reversible error in giving such instruction. In *Havill v. State,* 11 Okla. Cr. 483, 148 Pac. 683, it is held:

First.   "In the trial of a criminal case the burden is never upon the accused to establish any issue beyond a reasonable doubt. In certain cases he may be required to furnish sufficient evidence to raise a reasonable doubt, unless the proof on the part of the state raises such reasonable doubt; but more is never required of him."

Second.   "If, in the course of the trial, the court submits to the jury an instruction which has the effect of requiring the accused to establish his innocence or any other material fact beyond a reasonable doubt, and a conviction is had, a reversal will follow an appeal."

In *Blythe v. State,* 12 Okla. Cr. 23, 151 Pac. 488, Judge Doyle, speaking for the court, says:

"The defendant was entitled to have his case submitted to the jury on instructions fairly applicable to the evidence, including a correct statement of the defendant's right of self-defense under the particular circumstances disclosed by the evidence."

In *Carter v. State,* 12 Okla. Cr. 164, 152 Pac. 1132, it is held:

"Instructions which tend to shift the burden of proof, by requiring the defendant to establish his defense by a preponderance of the evidence, should not be given in any criminal case."

In *McIntosh v. State,* 8 Okla. Cr. 469, 128 Pac. 735, it is held:

"Where the evidence reasonably presents that issue in a murder case, it is the right of the defendant to have a clear, affirmative, and clean-cut instruction upon the law of self-defense."

In *Henry Johnson v. State,* 5 Okla. Cr. 14, 113 Pac. 552, the following instruction was before the court for review:

"You are instructed that a person has a right to fight in his necessary self-defense, and to take the life of his assailant if he believes in good faith that it is necessary for him to do so, in order to prevent great bodily harm or death at the hands of his assailant; but in such case it must appear to the defendant, viewing the situation from his standpoint at the time, that the danger was so imminent and pressing that it was necessary for him to act in order to prevent receiving great bodily harm, or death, at the hands of his assailant."

In commenting on the above instruction, the late lamented Judge Furman says:

"An exception to this instruction was properly reserved at the time it was given. This instruction should have gone further, and informed the jury that, if the evidence on this point was such as to raise in their minds a reasonable doubt as to whether or not the defendant * * * acted in good faith, and upon reasonable appearances of danger of then receiving great bodily harm or death at the hands of his assailant, then the jury should resolve that doubt in favor of the defendant, and acquit him."

In *Joe McClatchey v. State*, 12 Okla. Cr. 173, 152 Pac. 1136, it is held:

"The burden does not rest upon the defendant to establish, even to a reasonable probability, the truth of an affirmative defense; if, upon the evidence both for the state and the defendant, a reasonable doubt is created as to the guilt of the defendant, he is entitled to the benefit of it, and where the crime charged is distinguished into degrees the defendant is entitled to the benefit of that doubt, as well with respect to the degree of the crime as to every essential element of that degree, and in these respects the burden never shifts from the state to the defendant."

In the body of the opinion it is said:

"That the rule is well settled that the burden does not rest upon the defendant to establish even to a reasonable probability the truth of an affirmative defense."

Certainly instruction No. 13 is not in accord with the foregoing authorities, as it places the burden of the evidence wrongfully upon the defendant.

Again, we think that the state might have properly directly, as it has done indirectly, confessed error in this case, as it says in its brief:

"We are going to admit right here that in the charge of the court, section 13, that the court did put the burden on the defendant."

Reversed.

DOYLE, P. J., and MATSON, J., concur.