FATE DODSON v. STATE.

No. A-5050.  Opinion Filed Oct. 30, 1925.
Rehearing Denied Jan. 23, 1926.
(242 Pac. 578.)

H. L. Adkins, A. A. Brown, and Sylvester Grim, for plaintiff in error.

The Attorney General and Chas. Hill Johns, Asst. Atty. Gen., for the State.

BESSEY, P. J. Plaintiff in error, defendant in the trial court, was charged with the murder of Clarence Trammell, and found guilty of manslaughter in the first degree, with his punishment fixed at imprisonment in the penitentiary for a term of 25 years.

The several assignments of error set out in defendant's brief may be grouped thus: First, error in the refusal of the court to grant a change of venue; second, that the evidence is insufficient to support the verdict; third, that instruction No. 21, given by the court, was erroneous and prejudicial to the rights of the defendant.

In the motion for a change of venue, it was urged that the citizenship throughout the entire county was prejudiced against the defendant to such an extent that he could not be afforded a fair trial within the county. In support of this motion it was stated that Clarence Trammell, the deceased, was the son of R. L. Trammell, who had been sheriff of Roger Mills county covering a period of 12 years; that R. L. Trammell was acquainted with practically every adult citizen in the county, and that he was held in high esteem by the citizenship of the county everywhere; that the tragic demise of his son had created a sympathy in favor of the Trammell family and feeling against the defendant; that Clarence Trammell, the deceased, had himself been a deputy sheriff, and had a wide acquaintance throughout the county; that he was widely and favorably known in many parts of the county, and that the citizens of the county generally became enraged and excited, based upon rumors and purported facts surrounding the homicide; that after the defendant's arrest he was immediately taken to the jail in Beckham county to avoid danger of mob violence in Roger Mills county; that a large number of citizens in the county seat and elsewhere had contributed money to

employ special counsel to prosecute this defendant; that the sentiment created by the enemies of the defendant and the friends of the deceased had become so strong and universal throughout the county that the defendant could not have a fair trial in Roger Mills county. These claims were supported by the affidavit of the defendant and the affidavits of six others, residing in various parts of the county.

The county attorney resisted the application by filing eleven affidavits, signed by 136 citizens. These controverting affidavits were circulated in all parts of the county, and were to the effect that there was no general personal prejudice existing against the defendant, and that there was a sufficient number of citizens in the various communities of the county who had not heard the facts, and that there was no reason why the defendant could not have a fair trial in Roger Mills county. The county attorney further made a showing that there was no demonstration of mob violence within the county, and that the reason the defendant was not confined in jail within the county was because at that time there were no adequate jail facilities in the county, that there was no demonstration of hostile feeling at the preliminary hearing, and that, after the defendant was released on bond, he went from place to place within the county without being molested, and that no threats of mob violence were made by any person.

After consideration of the affidavits and oral testimony, this application for change of venue was by the court overruled.

The granting of a change of venue lies in the sound and impartial discretion of the trial court, and, unless it appears that such discretion has been abused, the appellate court will not disturb the ruling of the trial court. Tegeler v. State, 9 Okla. Cr. 139, 130 P. 1164; Maddox

v. State, 10 Okla. Cr. 569, 139 P. 994; Gentry v. State, 11 Okla. Cr. 355, 146 P. 719.

The mere fact that the deceased was well known in many parts of the county should not operate to the disadvantage of his family and friends, unless it is made to appear that such friendship amounted to prejudice such as would interfere with the defendant's having a fair and impartial trial. That the trial judge did not err in refusing to grant a change of venue is confirmed by what appears in the affidavits and the oral testimony adduced in resisting the application, along with the facts that an examination of the whole record discloses that subsequently there was no difficulty in procuring an unbiased jury, and that no demonstration or other evidences of prejudice were made manifest at the trial.

The assignment of error that the evidence is insufficient to support the verdict must likewise be rejected. One witness testified positively that the defendant was the aggressor and fired the first shot in the fatal difficulty without any hostile demonstration on the part of the deceased. Another witness testified that he did not see the firing of the first shot, but his testimony shows that the things he did observe indicate that the defendant was the aggressor, and that the fatal shots were fired under such circumstances as to indicate that the homicide was committed with a premeditated design, or in the heat of passion without justification. True there was testimony in direct conflict with that of these two and other witnesses for the state, but it has been so often held by this court as to require no citation of authorities that the weight of the testimony and the credibility of the witnesses is for the jury.

After the court had properly and fairly instructed the jury upon the different phases of justifiable homicide, he gave the following instruction, instruction No. 21:

"If you do not believe from the evidence beyond a reasonable doubt that the defendant is guilty of murder, but do believe from the evidence beyond a reasonable doubt that he (the said Fate Dodson), either in a heat of passion, or unnecessarily, while resisting an attempt by the said Clarence Trammell to kill him or to do him some bodily injury, and after such attempt shall have failed, if you find from the evidence beyond a reasonable doubt that it did fail, did then and there make an assault in and upon the said Clarence Trammell with a certain firearm and revolver then and there held in the hands of him, the said Fate Dodson, though without premeditated design to effect the death of the said Clarence Trammell, and did then and there fire, shoot, and discharge the said firearm at and into the said Clarence Trammell without authority of law, then and thereby inflicting upon the body of the said Clarence Trammell certain mortal wounds of which the said Clarence Trammell did then and there die, then it will be your duty to convict the defendant, Fate Dodson, of manslaughter in the first degree and so say by your verdict, unless you should find that at the time of the homicide it reasonably appeared to the defendant, under all the facts and circumstances in the case, viewed from his standpoint, that it was necessary at the time of the killing to take the life of the deceased, in which event the killing would be justifiable homicide, and the defendant should be acquitted."

The defendant earnestly insists that the qualifying clause at the end of the instruction, beginning with the words, "unless you should find," etc., shifts the burden of proof to the defendant, and that for this reason this instruction is erroneous and prejudicial, and that the error is not cured by other instructions upon reasonable doubt and burden of proof.

This court has firmly adhered to the principle that the burden of proof on the whole case is on the state, and that, if there exists any reasonable doubt as to any essential element of the crime charged, the defendant should be acquitted. On the other hand, this court will not in-

dulge in abstruse shades of meaning in the consideration of particular clauses of an instruction, where, from a reading of the whole instruction, it appears that the jury could not have been misled. Jurors are not prone to consider hidden, obscure phases of qualifying clauses.

Reasonably construed, this qualifying clause did not shift the burden of proof to the defendant. In a preceding instruction the court told the jury that, if they had any reasonable doubt as to whether the defendant acted in self-defense, they should acquit him. Later, to the same effect, in two other instructions, the jury were admonished to accord the defendant the benefit of every reasonable doubt.

The instructions in this case, singly and as a whole, were different in various respects from those in the cases cited by the defendant. Johnson v. State, 5 Okla. Cr. 13, 113 P. 552; Smith v. State, 12 Okla. Cr. 489, 159 P. 668; Brown v. State, 14 Okla. Cr. 115, 167 P. 762; Brown v. State, 15 Okla. Cr. 64, 175 P. 66; Slate v. State, 15 Okla. Cr. 201, 175 P. 843; Carter v. State, 12 Okla. Cr. 164, 152 P. 1132; McClatchey v. State, 12 Okla. Cr. 173, 152 P. 1136.

If in this case there had been no other instructions given relating to reasonable doubt, burden of proof, and justifiable homicide, there would have been merit in the contention of the defendant

In the case of Brown v. State, 14 Okla. Cr. 115, 167 P. 762, the court said:

"The instructions of the court must be considered as a whole, and if, when so considered, they are not prejudicial to the defendant, the judgment will not be reversed."

The Brown Case was reversed because the instruc-

tions given covering the issue of self-defense were confusing.

We hold in this case that the instructions as a whole were fair to the defendant. To have incorporated into this particular instruction a repetition of what was contained in other instructions would not have materially clarified the instruction or have operated to change the verdict of the jury.

The judgment of the trial court is affirmed.

DOYLE and EDWARDS, JJ., concur.