## CHARLEY SMITH v. STATE.

No. A-1446.    Opinion Filed April 1, 1914.

(139 Pac. 709.)

1. **CONTINUANCE — Refusal of Continuance.** Where, without preliminary complaint, the indictment was returned more than 18 months after the alleged offense was committed, and the case called for trial nine days later, and defendant's affidavit for continuance contained all the formal allegations required by law, and shows the temporary absence of two material witnesses, and shows what facts defendant expects to prove by said witnesses, and that he has used all possible diligence in endeavoring to get ready for trial, it was error to refuse a continuance.

2. **LARCENY—Elements of Offense—Felonious Intent.** To constitute larceny, there must have existed a felonious intent at the time of the taking.

3. **SAME—Sufficiency of Evidence.** Evidence in this case considered and found insufficient to warrant a conviction.

On rehearing.    Reversed.

For former opinion, see 9 Okla. Cr. 15, 130 Pac. 517.

*Tom W. Neal,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty. Gen., for the State.

DOYLE, J.    The plaintiff in error, Charley Smith, was indicted in the district court of LeFlore county on April 12, 1912,

10 Cr.—17

wherein he was charged with stealing a steer, the property of H. C. Dye and J. B. Maxey. The theft is alleged to have been committed on or about the 1st day of October, 1910. Upon his trial he was found guilty, and his punishment assessed at three years' imprisonment in the penitentiary. Judgment and sentence, in accordance with the verdict of the jury, was entered on the 6th day of May, 1911. From the judgment the defendant appealed. Upon motion for the state, the judgment was affirmed March 8, 1913. 9 Okla. Cr. 15, 130 Pac. 517. Thereafter, on the 14th day of March, 1913, petition for rehearing was filed, and, it appearing that the briefs had been misplaced, a rehearing was granted.

Several errors are assigned, but in the brief filed for the defendant but two questions are discussed: First, error of the court in overruling defendant's motion for a continuance; second, the insufficiency of the evidence to sustain the verdict.

Nine days after the indictment was returned, the case was called for trial, and the defendant filed his motion and presented his affidavit for a continuance, which, omitting the formal parts, is as follows:

"First. That there are absent from said court certain witnesses whose testimony is material to his defense, and without which he cannot get to trial, as follows, to wit: Walton James, who has resided all his life in Poteau, LeFlore county, up until a few weeks ago, when he went to Arizona temporarily, and has not yet returned; that said Walton James, if present, would testify that the steer with which this defendant is charged with stealing belonged to Wm. Monks, a cattleman who lives near McCurtain in the state of Oklahoma, and that this defendant took the steer to put in his own pasture, and to keep for the said Mm. Monks, and never at any time asserted any claim of ownership over said steer. That this defendant, while driving said steer to his pasture, injured it and broke it down in the loins, and, in order to preserve any part of said steer, it became and was necessary for this defendant to sell the said steer to Poonix Bros., butchers at Poteau; that this defendant has not issued subpoena for the said Walton James since the finding of this indictment, because of the fact that it was well known to everybody, and to this defendant, that the said Walton James was in

Arizona temporarily, and temporarily absent from his home in Poteau, and temporarily absent from this county and state.

"Second. That there is absent from attendance upon this court one Joe Trammel, who the defendant is informed is now in Cheyenne, Wyo., but who was present in Poteau at the time of the indictment in this cause, and for whom this defendant immediately caused subpoena to issue to serve upon the said Joe Trammel, which said subpoena was duly and lawfully served by the sheriff of this county, and the said Joe Trammel is not present in attendance upon the court; that, if present, he would testify that the steer in question was branded with a large 'Z' upon the side, and that the said Wm. Monks had employed him (the said Joe Trammel) to hunt for said steer, and was present when the said Monks told the defendant, if he could find the steer, to put him in his pasture, and keep him until the said Monks could send for him; that said witness, if present, would testify that said steer was branded with a big 'Z' as aforesaid, also branded with the figure '21' on shoulder and hip.

"That said defendant cannot prove said facts above set out by any other witness, and said testimony is true, and that he used all reasonable diligence to procure the attendance of said witnesses at this term. That this indictment has only been returned into this court since the 12th day of April, 1911, and that defendant has not had time to procure the depositions of said witnesses, nor to prepare his defense."

On the 25th day of April, 1911, the court overruled the motion for continuance, exception was taken, defendant entered his plea of not guilty, and the trial proceeded.

It is the settled rule in this state that a motion for continuance is addressed to the sound discretion of the trial court under all the circumstances of the case, and its action thereon will not be disturbed, unless an abuse of discretion appears. In the instant case, we think a clear abuse of discretion appears. There can be no question but that the absent testimony as set forth in defendant's affidavit was material and indispensable to his defense, and the evidence adduced on the trial does not render it improbable that it is true. In view of the fact that there was no preliminary complaint filed against defendant, and it appearing that the indictment was not returned until more than eighteen months after the alleged offense was committed, it would seem

that defendant was entitled to reasonable time to prepare for trial, and it was error in the court to overrule his motion for a continuance.

The state's evidence shows that Dye & Maxey, a partnership doing a general cattle business, used two "Z's" as their brand, one on the side, and one on the left hip, one "Z" about four inches, and the other over a foot; and a man by the name of Monks owned a brand known as a large "Z."

J. B. Maxey testified that the defendant told him that he had killed the steer and sold it to the butcher at Poteau; that he was working for Mr. Monks, and had crippled the steer, and thought the best thing he could do was to butcher it; that Monks had bought the Ben Thompson cattle, and their brand was a little "Z."

T. A. Bullard testified that he saw defendant kill the steer; that he had the steer tied to a stump near his home; that the steer was crippled, and he asked him to water it. The next day defendant came back with another man and killed the steer.

Will Aldridge testified that the steer had been in the neighborhood about four years; that he talked to the defendant about the steer, and the defendant said that the steer was Monks', and that Monks told him to get the steer for him; that defendant roped the steer and started away with it, and later he saw the steer tied to a stump near the road.

L. Mabrey testified that he knew the Ben Thompson's brand; that it was a "Z" on the shoulder.

William Monks testified that he knew the Maxey brand, two "Z's," and then the Ben Thompson brand was "Z"; that he bought the Ben Thompson's cattle, but did not authorize the defendant to get up the two "Z" steer; that the defendant did help him to get up steers with the Ben Thompson brand; that somebody told him that there were some of his Thompson steers up there, and he told Quarles that he would pay him to bring them down to him; that the defendant told him that some of them were claiming that steer of his, and he told him that he would pay him for bringing down any of his cattle.

On behalf of the defendant, Oscar Quarles testified that Bill Monks told him to get the steer with a "Z" brand. That he tried to get the steer, but the steer got away.

A witness, Jones, testified that he saw the steer some time in June, and told Bill Monks that he thought he had found one of the steers that he had bought from Thompson with the "Z" brand.

The defendant testified, in his own behalf, that he had lived near Poteau ten years, farming, buying and selling stock; that Mr. Monks asked him if he had seen any steer branded with a "Z," and he told Monks about seeing this steer, and Monks said that he had bought the Thompson's cattle with the "Z" brand, and told defendant to bring the steer down the next time he went up there; that he was there in October and roped the steer and started with him, and the steer commenced fighting and fell; that he tied him to a stump, and went back the next morning; that he tried to drive him and went a little piece, and the steer fell down again; that, when he found that he had crippled the steer, he went to Poteau and sold it to the butcher for $30; and returned with the butcher's boy and they butchered the steer; that he had not paid Mr. Monks, and no other person had ever demanded the proceeds of the steer from him.

We are constrained to hold that the evidence is not sufficient to support the verdict and judgment of conviction. We think the state's evidence is not *prima facie* sufficient to establish the *corpus delicti*. The circumstances of the taking, as shown by the witnesses, are that the steer was taken in the daytime in the presence of Aldridge and others by defendant, not as his property, but as the property of Monks, and for the purpose of turning it over to the owner. All the witnesses who knew anything about the facts testified that the steer was crippled, and was kept tied by the side of the road a part of two days before it was finally butchered. Whether, in fact, it was the property of Monks or not, there is no proof to show that de-

fendant did not believe that it was the steer that belonged to Monks. The evidence at most does not raise more than a mere suspicion that the taking was felonious.

For the reasons stated, the judgment is reversed.

ARMSTRONG, P. J., and FURMAN, J., concur.