## EARNEST LOCKHART v. STATE.

No. A-1876.    Opinion Filed April 18, 1914.

(139 Pac. 1156.)

1. **LARCENY—Sufficiency of Evidence.** Evidence stated in the opinion considered, and found insufficient to warrant a conviction.

2. **SAME—Instructions—Elements of Offense.** An instruction whereby the court attempts to state the material elements of the crime charged, but which omits an essential element, is erroneous.

3. **TRIAL—Instructions—Evidence.** Instructions set out in the opinion held to be erroneous.

*Appeal from District Court, McIntosh County;*
*Preslie B. Cole, Judge.*

Earnest Lockhart was convicted of the larceny of a domestic animal, and appeals. Reversed.

*Griffing & Hopper* and *Brook & Brook,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty. Gen., for the State.

DOYLE, J. Plaintiff in error was tried, convicted, and sentenced to serve a term of two years' imprisonment in the penitentiary on an information which, after alleging venue and time, reads as follows:

"Did then and there unlawfully, willfully, and feloniously, by stealth, steal, take, and carry away, without the consent and against the will of the true owner, one two-year-old red cow, with white spot or spots on face, the personal property of one E. L. Nunnly, with the unlawful and felonious intent then and there of him, the said Earnest Lockhart, to deprive the said E. L. Nunnly thereof, and to convert the same to his own use and benefit contrary to," etc.

The following is a substantial statement of the evidence: Prosecuting witness, E. L. Nunnly, testified that he lived near Stidham; that he lost a two-year-old heifer in June, 1912; that he made search and found her in Mr. Killingsworth's pasture two weeks after he missed her; that defendant gave him another heifer for the stolen heifer; that defendant told witness that he had bought the heifer from an Indian named Jones.

Cross-examined he stated that, when he took defendant's heifer for his heifer, he told defendant he would give him a chance to get the man from whom defendant said he bought the heifer, if defendant would let him have $100 to stand good for his appearance; that defendant said that he did not have any money, but would let him have two cows to "stand good"; that under the agreement prosecuting witness was to hold the two cows until the last of July; that after that defendant came to him and said he could not find the Indian, Jones, and wanted the

two cows back; that he refused to give defendant the cows, and defendant replevined them, and he then swore to the complaint.

Walter White testified that he lived about a mile from the prosecuting witness, and the alleged stolen heifer ranged with his cattle; that on or about the 10th or 13th of June, about midday, he was sitting on the porch of his house and saw defendant pass and ride up to the cattle on the prairie and drive one of them off; that Mr. Nunnly's heifer did not come up with his cattle that night.

Davis Killingsworth testified that in June he bought five head of cattle from defendant; that he paid $14 for the heifer; that Mr. Nunnly shortly afterwards claimed the heifer, and he was present when defendant offered to give Nunnly another heifer for the alleged stolen heifer, and Nunnly consented.

At the close of the state's evidence, the defendant entered a demurrer to the evidence, which was overruled, and exception reserved.

Defendant, Earnest Lockhart, testified that he had lived at Stidham for about six years; was a farmer, and occasionally buys and sells cattle; that on the 12th day of June he bought two cows from Mr. McElroy, and the next day bought four from Mr. Rumsey, and on the 13th day of June he met an Indian driving this heifer and a cow along the road between Stidham and Lenna, and offered him $35 for the two; that the Indian said he would take $30 for the cow and $12 for the heifer, and he bought the heifer and drove it home, passing witness White's place; that he tied the heifer by the side of the road in a grass patch, and a day or two later he sold the cattle he had bought to Mr. Killingsworth; that shortly afterwards Mr. Killingsworth told him that Nunnly was over and claimed the heifer; that he then went to Mr. Nunnly and asked him if he claimed the heifer, and he said he did, and he told him, if it was his heifer, he could have her; that he loaned Mr. Nunnly a horse, and they rode together over to Killingsworth; that while they were there he agreed to let Mr. Nunnly have another heifer for the one that Mr. Killingsworth had, and on the way back they went to defendant's pasture, and Mr. Nunnly picked out another heifer

from defendant's herd and drove it home; that while they were there Mr. Nunnly said, "I don't believe that you stole the heifer, and you let me hold two of your cows until the last of the month, and then, if you don't find the man, I will turn the cows back, and I agreed to it;" that when the time came he went to Mr. Nunnly and asked him for his cows, and he said, "I won't turn those cows over unless you pay me $100 for my trouble;" that he then replevined his cows.

Several witnesses testified to having seen defendant driving the heifer along the road from Lenna towards his home. Several others testified as character witnesses, and that defendant's general reputation for honesty and being a law-abiding citizen was good.

Many alleged errors are assigned as grounds for reversal of the judgment, only a few of which will be noticed and considered. The main question is the sufficiency of the evidence.

Exceptions were taken to several instructions in the charge of the court. Instruction No. 5 reads as follows:

"If you believe from the evidence in this case beyond a reasonable doubt that on or about the 13th day of June, 1912, or at any time within three years next prior to the filing of the information herein, that the defendant, Earnest Lockhart, unlawfully, willfully, and feloniously, by stealth, took, stole, and carried away the property described in the information, with the intent to convert the same to his own use, and to deprive the true owner thereof, you will find the defendant guilty; but, on the other hand, if, after a careful, candid, and impartial investigation of all the facts and circumstances adduced in evidence, or the lack of the same, you entertain a reasonable doubt as to any of the material allegations of the information as above explained, and which is necessary to be proved, then you must give the defendant the benefit of the doubt and acquit him. (Excepted to by the defendant.)"

By this instruction the court attempted to state the material elements of the crime charged. It is apparent that the instruction omits an essential element of the crime of larceny of domestic animals as alleged in the information, to wit: The felonious intent to deprive the owner thereof, and to convert the same to the use of the taker. An instruction whereby the material

elements of the crime charged is attempted to be stated, but which omits an essential element, is erroneous.

Instruction No. 6 reads as follows:

"You are further instructed that, if you believe from the evidence in this case that said property was stolen from one Nunnly, and if you further believe that said theft was committed by some other person than the defendant, and that the defendant had no connection therewith, then you should find the defendant not guilty, or, if a reasonable doubt thereof exists, then you should give the defendant the benefit of the doubt and acquit him. And you are further instructed that, if you believe from the evidence that the defendant, without having any connection with said theft, did in good faith purchase said cow or animal from one Jones, then, in that event, you should acquit the defendant."

It is apparent that within itself this instruction is inconsistent and contradictory, and we think it is subject to the criticism that it requires the jury to believe from the evidence the existence of the conditions stated before defendant would be entitled to an acquittal. In other words, it requires the jury to believe from the evidence that he is innocent before finding him not guilty, thus in effect depriving defendant of the benefit of the presumption of innocence until the contrary is proven. If the jury entertained a reasonable doubt, upon the whole evidence, of defendant's guilt, it was their duty to acquit him, although they might not believe from the evidence the existence of the facts and conditions, or any of them, as stated in this instruction.

This court is of the opinion that the evidence introduced by the state is insufficient to support a conviction of the offense charged. Without considering the evidence which is favorable to defendant, but taking into consideration that only which might tend to prove his guilt, it appears therefrom that defendant took the alleged stolen heifer openly, in the daytime, and drove it along the highway to his home, and there tethered it by the roadside, and a few days later sold it to a party living in the same neighborhood of the real owner. There was no concealment in any way, and the testimony of the owner of the heifer is that he accepted another heifer which was voluntarily given to him by

defendant in place of the alleged stolen animal immediately upon his claim of ownership. The prosecuting witness' testimony would indicate that he then attempted extortion by demanding two cows, or $100. If the testimony for the state was sufficient to prove that the crime charged had been committed, then the prosecuting witness, on his own testimony, would be guilty of extortion or of compounding a felony. However, we think that the evidence shows that, when the prosecuting witness took defendant's heifer in place of the one defendant had sold to Killingsworth, all the parties concerned believed defendant was innocent of the crime charged.

Where the taking is open, in the presence of others, and there is no subsequent attempt to conceal the property, and no denial, and where possession is not obtained by force, trick, or stratagem, a strong presumption of fact arises that there was no felonious intent, which must be repelled by clear and convincing evidence before a jury may legitimately infer a felonious intent.

In a case like this, where the evidence is so plainly insufficient to show the necessary elements of the offense charged, there should be no hesitation in reversing the judgment of conviction.

The judgment of the lower court is therefore reversed.

ARMSTRONG, P. J., and FURMAN, J., concur.