# W. D. PEYTON v. STATE.

No. A-3235.   Opinion Filed Sept. 20, 1919.

(183 Pac. 639.)

**TRIAL—Requested Instructions—Material Issue.** The defendant has a right to have, when requested, an affirmative instruction given to the jury applicable to his testimony, based upon the hypothesis that it is true, when such testimony affects a material issue in the case and would constitute ground for acquittal.

*Appeal from County Court, Payne County;*
*Wilberforce Jones, Judge.*

W. D. Peyton was convicted of unlawfully conveying intoxicating liquors, and punishment assessed at a fine of $50 and 30 days' imprisonment in the county jail, and he appeals. Reversed and remanded.

*Thos. A. Higgins* and *Sylvester J. Berton,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

PER CURIAM. W. D. Peyton was convicted in the county court of Payne county of the crime of unlawfully conveying intoxicating liquors, and his punishment fixed at a fine of $50 and 30 days' imprisonment in the county jail. From this judgment of conviction, he has appealed to this court, and has assigned numerous errors, all of which are without substantial merit, except one, which is treated in this opinion as the basis for reversal of the judgment.

The facts are substantially as follows:

The defendant, Peyton, lived in Cushing, Okla., had been constable of the city, and a member of the police force, and was the owner of an automobile, which he had

used as a livery car. Numerous prominent citizens of the town testified that Peyton bore the general reputation of being a law-abiding citizen, and this fact was not controverted by the state.

According to the state's testimony, Peyton drove his car between the hours of 10 and 11 on the night of August 10, 1917 to a house northeast of the Katy depot in the city of Cushing, where one Spiker resided, and was seen to go into the house and come out with a gunny sack, which proved to be partially filled with nine quarts of whisky.

Spiker, who was a witness for the state, testified that, some days before the night on which defendant was arrested, the defendant and one Reed had brought a large quantity of whisky to his (Spiker's) house, and had stored it there, and knowing that the defendant was coming after some of the whisky on this particular night, he (Spiker) notified the sheriff, and arrangements were made to intercept the defendant in the act of transporting said whisky, and the evidence discloses that the arrest of the defendant was the result of such arrangement.

In substance, the defendant's testimony is as follows:

"I live in Cushing. I am now working by the day, dressing tools. I have been constable of the city of Cushing, and worked on the police force there, and aside from my official duties I have driven a livery car. I begun in July. Have also worked for the Oklahoma State Bank of Cushing, collecting and delivering money for them. On the 8th of August, 1917, at 2:30 a. m., I was home in bed. I bought my car on August 4th, on the Sunday before Friday when I was arrested. I was up on the livery stand usually occupied by livery drivers. At 3 o'clock

in the afternoon I went driving, and was gone until 10:30; went home to bed. Monday I was on the stand. Sunday night my car stood in front of my house. Monday afternoon I went to Drumright, and drove from there some distance northeast, where my passengers looked at some leases; got back to Drumright at 5:30, and to enable them to catch a train I took them to Shamrock, arriving there at 7 o'clock and turned right around and came home. I stood on the livery stand awhile and went home. The night policeman went with me and drove my car back. I left the livery stand Monday night about 10:30 and went home; and there was no one else at home but my wife. On Tuesday I drove to the Consumers' Refinery in the afternoon. Tuesday night I went home and went to bed. Mr. Robinett went with me. Wednesday night I was home in bed. I went home at 5 o'clock, when my wife closed her office, which is the city clerk's office. I got my car about 9 o'clock Monday morning. Tuesday morning I got my car about the same time from the garage where I kept it. I didn't take the car out at all on Wednesday. It was raining, and I went home with my wife at 5 o'clock in the evening. During the day I did some work on the car; and the car was not out of the garage either Wednesday or Thursday. On Friday, the day I was arrested, I got the car about 7:30, came down to the cafe, got my passenger, and drove to Quay oil fields, and from there I drove to Cleveland, Okla., where I took my passengers to a hotel, and after telling them that I would check them out at the Thompson Hotel in Cushing, I started home. I never at any time had any arrangement with Bill Reed to transport any liquor for him or with him to Spiker's residence. I never went to Spiker's with Bill Reed. I never at any time nor with any person carried whisky or other intoxicants to Spiker's house and put it in a cave. Bill Reed never asked me to do so. Reed knew I was an officer. I had raided him at least a half dozen times. I left Cleveland on August 10th at 5:30, and got to Cushing about 9:30. I never at any time or in any way had any communication with

Bill Reed, in which he asked me to procure or haul any liquor for him. After arriving in Cushing, I first drove home. My wife was there, and she informed me that someone had been calling for me. I had to go down to the hotel to check my passengers out as I had agreed to do, and while there went to the American Cafe to eat lunch. While standing at the cash register the telephone rang and asked if Peyton's livery car was there. I answered the phone and said, 'This is Peyton talking.' They told me to come over to the Katy depot, and described the place for me to come to, and how to get in. After this telephone conversation I drove across the Katy tracks and turned east; had my light on all the time. I drove up to Spiker's house and stopped on the south side of it; about 25 feet. I saw Spiker and had a little conversation with him. I opened the door of my car, put my foot on the running board, and started to get out; he came around behind the car and set in something in a sack; I didn't ask him what; put it in the front seat. He told me the way was rough out to the east, and he would go back behind my car and tell me how far I could back to get out, and said, 'Now, you go across the Katy tracks and wait, and I will meet you there'; and I didn't see him any more, and before I got off the road I was arrested. I didn't go in the house that night, nor get out of the car. I did not have my hands off the steering wheel, except to open the door, and I certainly didn't know that was whisky in that sack at that time, and didn't see Spiker for some time after that. At the time I was arrested I did not tell Lilley I had some whisky. They asked me what I was doing, and I told them I had come to make a drive. They didn't ask me what I had. I didn't know it was whisky that was in the sack; in fact, didn't know what it was."

The defendant, among other instructions, requested the court to instruct the jury as follows:

"The jury is further instructed that evidence has been introduced by the defendant, tending to explain his connection with the whisky testified to by the witnesses for the state; the contention of the defendant in this respect being that, while admitting there was whisky in the package testified to, he had no knowledge that the same contained whisky, or any other liquor or substance, the transportation of which is prohibited by the laws of the state. You are told that, before the defendant can be convicted of the charge against him, you must be satisfied from the evidence beyond a reasonable doubt that the defendant did know, or did have reasonable cause to know, that the contents of said package were such that their conveyance or transportation from one place within this state to another therein was in violation of law; and if you entertain a reasonable doubt as to whether the defendant knew or did not know the character of the contents of said package, and that its conveyance or transportation was prohibited by the laws of this state, then your verdict must be not guilty. You are further instructed, in determining this question, namely, whether the defendant knew of the actual contents of said package, you have a right to take into consideration all of the evidence and circumstances testified to on the trial.

"Refused and exception allowed defendant.

"WILBERFORCE JONES, *Trial Judge.*"

The refusal to give this instruction, which was excepted to by counsel for the defendant, is urged as grounds for reversal of this judgment. The trial court nowhere gave an affirmative instruction covering the law as applied to the defense interposed. The Attorney General admits that the refusal to give this instruction, or one similar thereto, was error, but contends that the error was harmless because a new trial could not result in any other verdict than that of guilty.

This court has repeatedly held that it is error for the trial court to fail and refuse to instruct on the law applicable to a theory of the defense which the evidence tends to support, when the defendant requests it, and when such evidence affects a material issue in the case. *Crittenden v. State,* 13 Okla. Cr. 351, 164 Pac. 675; *Payton v. State,* 4 Okla. Cr. 316, 111 Pac. 666; *McIntosh v. State,* 8 Okla. Cr. 469, 128 Pac. 735; *State v. Hill,* 63 Or. 451, 128 Pac. 444; *Harris v. State,* 11 Okla. Cr. 412, 146 Pac. 1086.

Instruction No. 5, given by the court, is as follows:

"The court instructs the jury that any person who receives intoxicating liquors from a bootlegger or other person not lawfully in possession thereof, and carries it any distance, however short, is subject to the same penalties for so doing as the person who unlawfully transferred the same, either by sale, gift, or otherwise furnishing the same to the person receiving the same; and if you believe from the evidence that the defendant received the liquor as shown in the evidence in this case from J. L. Spiker, and conveyed the same from one point to another as set forth in the information, you should find the defendant guilty and assess his punishment not to exceed six months in the county jail of Payne county and a fine of not more than $500, or imprisonment in the county jail not less than 30 days and a fine not less than $50.

"To which the defendant excepts; exception allowed.

"WILBERFORCE JONES, *County Judge.*"

This instruction was given over the objection and exception of counsel for the defendant. When instruction No. 5, given by the court, is considered in connection with the refusal to give the instruction requested, as hereinbefore set out, it is evident that the court de-

prived the defendant of the benefit of his theory of defense, that he had no actual knowledge whatever of, **or** reasonable cause to know, the contents of the package which he claims the witness Spiker placed in his (defendant's) automobile, and which contained the whisky which he was charged with transporting. Instruction No. **5** practically informs the jury that the evidence shows that the defendant received whisky from the witness Spiker (inferentially with knowledge that it was whisky), and the instructions given, considered as a whole, leave no alternative to the jury but to convict the defendant, irrespective of the question of whether or not the defendant had any knowledge of, or reason to know, the contents of the package received from the witness Spiker. The defense, if believed, entitled defendant to an acquittal. *Golpi v. State,* 14 Okla. Cr. 564, 174 Pac. 288.

In view of the fact that the defendant had borne a good reputation as a law-abiding citizen in that community, had held both the office of constable and deputy sheriff in that county, and had never been shown to be a violator of the law, it cannot be assumed that the failure of the court to give an affirmative instruction covering the law as applicable to the defense interposed was not prejudicial error.

The judgment of conviction is reversed, and the cause remanded for a new trial.