## A. A. LINDE v. STATE.

No. A-9138.  March 26, 1937.
(66 Pac. [2d] 527.)

L. H. Woodyard and John W. Whipple, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Guy L. Horton, Co. Atty., for the State.

BAREFOOT, J.  An information was filed in the district court of Payne county against the defendant, charging him with the crime of larceny of 45 turkeys.  He was tried, convicted, and the court assessed his punishment at 15 months in the penitentiary.  From this judgment and sentence, he has appealed to this court.

Among the errors assigned are:  First.  The evidence was not sufficient to sustain the conviction; second, that

the court erred in refusing to give certain requested instructions.

These errors may be considered together. It is contended by the defendant that the evidence failed to show a criminal intent on his part and that the turkeys were taken by him in an honest belief that they were his own property and that he still believes them so to be.

After carefully reading the record in this case, we are of the same belief. The evidence showed that the defendant was a farmer, living 9 miles northwest of Stillwater, in Payne county; that he was farming 320 acres of land, and had resided there two years; that he had been a resident of Payne county for twenty-seven years; that he was married and had four children; that at the time this information was filed against him he was also extensively engaged in raising turkeys; that during the year 1935, he had raised approximately 400; that some time prior to the date charged in the information, dogs or wolves had scattered and separated them and he lost a large bunch of turkeys which he had raised; that on Monday, August 12, 1935, the same being the day prior to the alleged offense, a neighbor woman called the defendant over the telephone and told him that there were some stray turkeys there, and asked him to come over and see if they were the ones he had lost; that in the forenoon of that day he and one of his sons went in a car with a neighbor to see if he could identify the turkeys; that upon seeing the son of the woman who had called him in a nearby pasture, he got out of the car and was informed by the boy that the turkeys were over at a neighbor's place by the name of Mrs. Burke; that he then went over there and found a bronze turkey hen and, as they say, 49 young bronze turkeys, being the same color of the ones he had lost; that upon he and his son identifying the turkey hen

and the smaller turkeys as being the ones that he had lost, they drove them home along the public highway; that upon reaching home they were placed with their turkeys and he and his family testified that there was no fighting among them as was usual when strange turkeys are mixed; and that they knew where to go for feed and water.

On the Friday following, the prosecuting witness, a neighbor lady, who had lost some turkeys, came to the home of defendant. She informed the defendant of her loss and asked him to let her see the turkeys he had driven from Mrs. Burke's. The defendant showed them to her and told her after bringing them home he and the boys had marked them by cutting off one of the toes so that he would know them if they strayed away again. She made no examination of the turkeys at this time, but returned the next evening with one of her neighbors and asked to see the turkeys again. The defendant assisted in the catching of the turkeys so that she and her neighbor might examine them. There was nothing done by the defendant in any way to conceal the turkeys or to refuse to give her any assistance he could in the examination of them. She left without saying anything as to whether she identified the turkeys as hers, nor did she in any way make any demand of the defendant that he should turn them over to her. The first the defendant knew that she claimed they were her turkeys was when he was arrested by reason of a warrant sworn out by her, charging him with the larceny of her turkeys.

There was evidence that the turkey hen that she lost had a chain around her leg and a ring around her neck. Defendant testified and also his son and others that the one that he drove home did not have this ring and chain. There was also evidence with reference to the turkey

which she lost of having had one toe cut off and also of tracks around certain watering places that showed that turkeys had watered there and the tracks indicated that they had one toe cut off. Evidence to these tracks was conflicting. The defendant, his son, and members of his family positively identified the turkeys which he recovered as being the ones he had lost. At the trial of this case, he still contended that they were his.

The taking of the turkeys was in the daytime, with knowledge of others that they had been taken. The defendant at no time did anything to conceal the fact that he had taken them. He assisted the prosecuting witness in examining them and she at no time made demand for their return to her as her property.

It was the contention of the defendant in his evidence that the turkeys belonged to him and were his property at the time they were taken. Many neighbors testified to his good character and reputation in the community where he had resided. There was some testimony as to his having a bad reputation, but this was mostly from those with whom he had had some kind of controversy.

From the reading of this record, we cannot but come to the conclusion that it does not show any criminal intent on the part of the defendant to commit the crime of larceny.

This court has often said that felonious intent is an essential element in larceny and the state must prove beyond a reasonable doubt that the property was taken with such intent. This is also the general rule in larceny cases.

In announcing this rule, this court, in an opinion by Judge Davenport, in the case of Lansdale v. State, 45 Okla. Cr. 123, 282 Pac. 170, 175, quoting from 36 C. J. § 105, page 764, says:

"If one in good faith takes the property of another believing it to be legally his own, or that he has the legal right to its possession, he is not guilty of larceny although his claim is based on a misconception of the law or his right under it. For although ignorance of law and honest intention cannot shield a man from civil liability for the trespass committed by him, yet they do protect him from criminal liability by divesting the act of the felonious intent, without which it cannot be a crime."

See, also, Lockhart v. State, 10 Okla. Cr. 582, 139 Pac. 1156; Smith v. State, 10 Okla. Cr. 544, 139 Pac. 709; Sisson v. State, 16 Ariz. 170, 141 Pac. 713.

We have examined the authorities cited by the Attorney General in his brief in this case and do not think they are in any way in conflict with the rule announced above.

It was the contention of the defendant that his taking of the turkeys was in good faith, believing at the time they were his. He offered a requested written instruction, asking the court to inform the jury that if at the time of the taking of the property by the defendant he in good faith believed said property was his or if they had reasonable doubt to that effect, they should acquit him. This although he may have been mistaken in such belief.

The court refused to give this instruction and we think this was error. It is the duty of the court, in his instructions, to present to the jury the theory of the defense when requested by the defendant. This court has often held this to be true. See Crittenden v. State, 13 Okla. Cr. 351, 164 Pac. 675; Kilgore v. State, 25 Okla. Cr. 69, 219 Pac. 160; Buchanan v. State, 25 Okla. Cr. 198, 219 Pac. 420; Ammons v. State, 28 Okla. Cr. 433, 231 Pac. 326; Peyton v. State, 16 Okla. Cr. 410, 183 Pac. 639; Courtney v. State, 10 Okla. Cr. 589, 140 Pac. 163; Pay-

ton v. State, 4 Okla. Cr. 316, 111 Pac. 666; McIntosh v. State, 8 Okla. Cr. 469, 128 Pac. 735.

For the reason stated, the judgment and sentence in this case is reversed and remanded.

DAVENPORT, P. J., and DOYLE, J., concur.