Bill Wayne SIMMONS, a/k/a William Wayne Simmons, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–232.

Court of Criminal Appeals of Oklahoma.

April 14, 1976.

As Corrected on Denial of Rehearing May 11, 1976.

Valdhe F. Pitman and, Barry R. Davis, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jahn D. Rohrer, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Bill Wayne Simmons, a/k/a William Wayne Simmons, hereinafter referred to as defendant, was charged in the District Court, Oklahoma County, Case No. CRF–74–1755, by a two page information with the crime of Petit Larceny, After Former Conviction of a Felony. Page 1 of the information charged the defendant with the crime of Petit Larceny. Page 2 of the information charged the defendant with the crime of Petit Larceny, After Former Conviction of a Felony, in Case No. 31960, in the District Court, Oklahoma County, State of Oklahoma. He was tried by a jury, convicted and punishment by the jury was fixed at a term of three (3) years in the Oklahoma State penitentiary. From said judgment and sentence, a timely appeal has been perfected to this Court.

In the first stage of the proceedings, the State's first witness was Bennie L. Dickenson. He testified that on May 24, 1974, he was the manager of Strick's Tire Company, located at N. Western and Britton Road in Oklahoma City. At approximately 12:30 p. m., Dickenson and two employees of the tire company were inside the store when he noticed a white station wagon in the alley south of the store stopped near a large tire rack adjacent to the alley. He observed a man get out of the station wagon, remove a tire from the large tire rack and put it in the station wagon. He yelled to the two employees that the man had taken a tire from the rack and the two employees pursued the station wagon on foot Dickenson went to his vehicle and drove around the corner in order to block the alley. He drove down the alley and as he approached the station wagon he saw that Jimmy Leon Simmons, one of the employees, had already stopped the station wagon, and that the driver was out of the vehicle. After some conversation with the driver he became upset and ordered the driver to wait in the station wagon until the police arrived.

Following this testimony the witness identified the driver of the station wagon as the defendant. He then identified the tire alleged to have been stolen by defendant by pointing out the company markings on the tire. He stated that the value of the tire was between $12.00 and $15.00.

On cross-examination the witness described the physical layout of the tire store. He said that although his view of the station wagon was partially blocked he was able to see enough of the station wagon to identify it and to see the defendant remove a tire from the large tire rack.

The next witness to testify for the State was Jimmy Leon Simmons. He testified that on the 24th of May he was an employee of Strick's Tire Company, and that he was inside the store with Mr. Dickenson and another employee when he saw the white station wagon in the alley. After Mr. Dickenson yelled, he ran out of the store and pursued the white station wagon. He shouted at the driver, whom he identified in court as the defendant, to stop the station wagon. The witness approached the vehicle, opened the door and told the defendant to get out. The witness testified that when the defendant exited the car he stated that he could have gone on without stopping, and then he offered to pay for the tire. The offer was rejected and the defendant was told by the witness that they were going to call the police. While this conversation was going on Mr. Dickenson arrived, stopping his vehicle in front of the station wagon. The witness further testified that while waiting for the police to arrive he looked into the back of the station wagon and saw a tire. He was asked to examine a tire, State's Exhibit No. 1, and identified it as the same tire he had seen in the back of the station wagon. His identification was based upon the tire

company's markings on the tire. In his opinion, the value of the tire was $18.00 to $20.00.

The last witness to testify for the State was Larry W. Andrews, Police Officer with the Oklahoma City Police Department. He testified that when he arrived on the scene he saw two employees of Strick's Tire Company and the defendant, who was sitting in the station wagon. In the presence of defendant, one of the employees told him that he saw the defendant take a tire from the tire rack, place it in the back of the station wagon and drive away. The other employee told Officer Andrews that he had pursued the station wagon and stopped the defendant. The officer further testified that when he asked defendant his name, the defendant replied, "Bill Walters." The officer arrested defendant and read him his Miranda rights. The defendant was taken to the Oklahoma City Police Headquarters and the station wagon was impounded. At police headquarters the officer personally checked to see if defendant had been arrested before. In the process of checking the records, Officer Andrews learned the correct name of the defendant to be William Walter Simmons, and that the defendant had been previously identified by five other names.

Officer Andrews also testified that while at the scene of the alleged crime he removed the tire from the back of the station wagon, placed a police property tag on it and later placed it in the police property locker room. He identified State's Exhibit No. 1 as the tire he had removed from the station wagon and tagged.

On cross-examination Officer Andrews testified that he arrested defendant for larceny and did not advise defendant whether he was arresting him for grand larceny or petit larceny. He stated that he made no attempt to value the tire when he arrested the defendant, other than relying on the estimate provided by the tire store employees, which at that time they stated was $25.00.

At this point the State rested and the defendant did not present any witnesses, nor himself testify.

In the second stage of the proceedings the State's first witness, Greggory Marcel Smith, Deputy Court Clerk for Oklahoma County, identified State's Exhibit No. 2 as a final judgment and sentence on conviction in the case of the State of Oklahoma versus William Wayne Simmons, number 31960. Through this witness, State's Exhibit No. 2 was admitted into evidence.

The last witness to testify for the State was Marvin Doherty, Police Officer with the Oklahoma City Police Department. He stated that he had testified as a witness in 1966, in case number 31960, where William Wayne Simmons was charged with grand larceny after former conviction of a felony and was convicted of petit larceny after former conviction of a felony. The officer then identified the defendant herein as the defendant in the proceeding had in 1966.

The defendant's first assignment of error alleges that the trial court erred in failing to sustain defendant's demurrer to the information and motion to quash the information. Defendant contends that the information did not state facts sufficient to constitute an offense, the information was illegal and in violation of defendant's constitutional and statutory rights to equal protection under the law and that the information failed to apprise defendant of what he must defend against.

To fully understand the argument of the defendant it is necessary to set out the pertinent parts of the first page of the two page information. Initally, the information states that:

"BILL WAYNE SIMMONS, aka William Wayne Simmons whose more full and correct name is to your informant unknown, then and there being, did then and there wilfully, unlawfully and *FELONIOUSLY* commit the crime of PETIT LARCENY (21 O.S.A. 1701) . . . ." (Emphasis added)

Further, in the body of the information it states:

"[D]id then and there wilfully, unlawfully and *feloniously* take, steal and carry away by stealth and fraud, and without the knowledge or consent of the owner thereof, . . ." (Emphasis added)

And, further down it states:

"[T]he said taking, stealing and carrying away of said property on the part of the said defendant was with the unlawful, *felonious* and wilful intent to appropriate the same to his own use and benefit and to permanently deprive the said rightful owner thereof: . . ." (Emphasis added)

The defendant contends that although the information charges petit larceny, it in fact purports to charge the defendant with a felony of petit larceny because the word "feloniously" is used twice and the word "felonious" is used once. It is the defendant's belief that the inclusion of these words in the information caused it to be fatally defective. We are of the opinion that the use of the words "feloniously" and "felonious" in the information do not purport to charge the defendant with the felony of petit larcey, but properly charges the misdemeanor of petit larceny.

The defendant was charged under 21 O.S.1971, § 1701, which reads:

"Larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof."

The general rule in larceny cases is that felonious intent is an essential element in larceny and the State must prove beyond a reasonable doubt that the property was taken with such intent. *Linde v. State*, 61 Okl.Cr. 136, 66 P.2d 527 (1937). In *Abraham v. United States*, 15 F.2d 911 (8th Cir. 1926), where the court was discussing the Oklahoma statute on larceny, it was stated by the court that animus furandi and intent to deprive the owner permanently of his property at the time of the taking is necessary to larceny. Animus furandi, as defined in Bouvier's Law Dictionary, page 199, 8th ed. 1914, is the intention to steal, in order to constitute larceny, the thief must take the property animo furandi; but this is expressed in the definition of larceny by the word felonious. Felonious intent is properly defined in *State v. Clingerman*, Kan., 213 Kan. 525, 516 P.2d 1022 (1973), at page 1026, as meaning:

"[T]hat felonious intent which has been defined as an intent to deprive the owner not only temporarily but permanently, of his property, without color of right or excuse for the act, and to convert it to the taker's use without the consent of the owner. . . ."

The information charged the defendant with petit larceny and the averment that the taking was done feloniously was not improper. In any event, where the connotation of the words felonious or feloniously may be taken to correspond to a felony crime, the use of such words in an information charging a misdemeanor may be disregarded as surplusage. This position is in line with the majority of the courts that have considered the issue. See, *Petition of Brown*, Mont., 150 Mont. 483, 436 P.2d 693 (1968); *State v. Minnick*, 54 Or. 86, 102 P. 605 (1909); *People v. Greenberg*, 302 Ill. 566, 135 N.E. 67 (1922); *Wolverton v. Commonwealth*, 75 Va. 909 (1881); *Staeger v. Commonwealth*, 103 Pa. 469 (1883); and *Davis v. United States*, 16 App.D.C. 442 (1900).

The defendant continues his contention that page 1 of the information allegedly charged him with the felony of petit larceny by asserting that the State used the Habitual Criminal Statute, 21 O.S., § 51, to define or create a new crime; the felony of petit larceny. The defendant contends that the State alleged petit larceny as a felony on page 1 of the information based upon the fact that page 2 of the information alleges a prior felony conviction. Further, the defendant contends that the information raised his reputation by charg-

ing him with a felony under the assumption that a prior conviction would be proved, and thus the information refers to a prior conviction without proof thereof. With these contentions we do not agree.

The statute in question, 21 O.S., § 51, provides:

"Every person who, having been convicted of any offense punishable by imprisonment in the penitentiary, commits any crime after such conviction, is punishable therefore as follows:

\* \* \* \* \* \*

"3. If such subsequent conviction is for petit larceny, or for any attempt to commit an offense which, if committed, would be punishable by imprisonment in the penitentiary, then the person convicted of such subsequent offense is punishable by imprisonment in the penitentiary for a term not exceeding five years."

In *Harris v. State*, Okl.Cr., 369 P.2d 187 (1962), this Court promulgated procedural guidelines to be followed in charging an accused by information under the second and subsequent offense statute. The information must be divided into two parts; the first page must set forth the particular offense with which the accused is charged, and the second page must contain the former conviction. In the case at bar, such procedure was explicitly followed as evidenced by the two page information; page 1 of the information charged the defendant with petit larceny, and page 2 charged the defendant with petit larceny after former conviction of a felony. In this regard, we do not find any basis for the defendant's contention that the State used 21 O.S., § 51, to define or create a new crime. The State sought to subject the defendant to a greater punishment as a second and subsequent offender.

█ It has been stated many times by this Court that 21 O.S., § 51, was never intended to supply substantive evidence of the guilt of the accused in the principle case for which he is on trial, but only to enhance the punishment in the event his guilt of the principle offense should be proven by independent testimony. Further, the statute does not define a crime, but merely describes circumstances wherein one found guilty of a specific crime may be subjected to a greater punishment as a second and subsequent offender. Habitual criminality is a state rather than a crime. See, *Harris v. State*, supra, and *Ervin v. State*, Okl.Cr., 351 P.2d 401 (1960). The record shows that the State used testimony independent of the defendant's former conviction of a felony to prove the defendant did commit the crime of petit larceny, and that the jury found the defendant guilty of the crime which was the principle offense for which he was on trial. In the second and separate stage of the proceeding, evidence of the defendant's prior felony conviction was then presented and the jury found that he had thus been previously convicted and fixed his punishment at three years' imprisonment, within the limit of 21 O.S., § 51.

█ It is a well established rule that the defendant's reputation may not be placed in issue until such time as it is raised by the defendant. See, *Harris v. State*, supra. Therefore, to allege a previous conviction in the information and read the same to a jury places the reputation of the defendant in issue at the beginning of the trial. But, we do not agree with the defendant's contention that the information raised the reputation of defendant by charging him with the felony of petit larceny. We are of the opinion, based on the above, that the defendant was properly charged in the two page information and was tried in conformance with the laws of this State.

The defendant next contends that to charge him with the felony of petit larceny in reliance upon the habitual criminal statutes is to violate his right to equal protection under the law. For this contention the defendant presents two arguments. First, 21 O.S., § 51, and 21 O.S., § 52, directly conflicts with 21 O.S.Supp.1968, § 1731, providing for punishment of a recidivist for larceny from a retailer or whole-

saler, the latest expression of the Legislature in regard to statutes of a similar nature. Second, petit larceny is the only misdemeanor crime where the Habitual Criminal Act can be invoked to enhance punishment, and thus the Legislature puts petit larceny in a class by itself without an overriding public policy reason therefor.

▪ In the foregoing, we have determined that the defendant was not charged with the felony of petit larceny and therefore this negates the defendant's underlying basis in regard to this contention that the habitual criminal statutes violate his right to equal protection of the law. But to meet the defendant's first argument, that the Habitual Criminal Act directly conflicts with 21 O.S.Supp.1968, § 1731, we need only make reference to 21 O.S.Supp. 1970, § 11, which settles any conflict between the statutes. The second sentence of 21 O.S.Supp.1970, § 11, reads as follows:

". . . But an act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, except that in cases specified in §§ 51 and 54, the punishments therein prescribed are substituted for those prescribed for a first offense, but in no case can he be punished under more than one; and an acquittal or conviction and sentence under either one, bars the prosecution for the same act or omission under any other."

This statute clearly applies to the case at bar, in that there was no denial of equal protection for charging the defendant under the Habitual Criminal Act rather than 21 O.S.Supp.1968, § 1731.

▪ In regard to the defendant's second argument, the constitutional validity of 21 O.S., § 51, has been repeatedly upheld as not denying equal protection of the law. The Supreme Court of the United States has also ruled upon the constitutionality of habitual criminal acts and has found no violations of any constitutional guarantees in such acts. See, *Hunter v. State,* Okl.Cr., 375 P.2d 357 (1962), for a detailed discussion of authorities.

▪ Defendant's last contention under his first assignment of error is that the information is defective because it alleges a non-existent crime and therefore defendant cannot possibly be apprised sufficiently of what he must defend against nor successfully plead former jeopardy to a subsequent prosecution for petit larceny. Both the defendant and the State have correctly cited the appropriate test for the sufficiency of an information as stated in *Jones v. State,* 94 Okl.Cr. 15, 229 P.2d 613 (1951), in the first paragraph of the Syllabus by the Court, as follows:

"The test of the sufficiency of an information is whether it alleges every element of the offense intended to be charged, and sufficiently apprises defendant of what he must be prepared to meet and so defines and identifies the offense that if convicted or acquitted the accused will be able to defend himself against any subsequent prosecution for the same offense."

We are of the opinion that the information in question has met the above stated test. It alleges the necessary elements to charge the defendant with the crime of petit larceny which was sufficient to apprise defendant of what he was to defend against. Defendant's conviction itself of the crime of petit larceny is a bar to any subsequent conviction for the same offense.

The defendant's next assignment of error alleges that the felony of petit larceny was not established by any evidence presented by the prosecution. Because this assignment of error is premised upon the contention that the information charged the felony of petit larceny, which we have determined to not be the case, there is no need to consider it except to point out that there was sufficient evidence to prove the offense of petit larceny. There was uncontradicted testimony by two employees of the tire company who saw defendant

take the tire and who stopped him shortly thereafter. The tire allegedly stolen was found in defendant's station wagon and was sufficiently identified at trial to be the same tire.

In his third assignment of error the defendant challenges the legality of the arrest and the evidence obtained from the arrest. The defendant contends that at the time of his arrest there was not sufficient facts to indicate a felony had been committed and the arresting officer did not have reasonable cause to believe that a felony had been committed.

To determine the validity of a warrantless arrest we must look to the pertinent parts of 22 O.S.Supp.1975, § 196, which provides as follows:

"A peace officer may, without a warrant, arrest a person:

\* \* \* \* \* \*

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

In construing this statute, this Court stated in *Darks v. State*, Okl.Cr., 273 P.2d 880, 884 (1954), citing with approval *Welch v. State*, 30 Okl.Cr. 330, 236 P. 68, as follows:

"If a . . . peace officer arrest a person without a warrant, he is not bound to show in his justification a felony actually committed, to render the arrest lawful, but if he suspects one on his own knowledge of facts; or upon facts communicated to him by others, and thereupon he has reasonable ground to believe that the accused has been guilty of felony, the arrest is not unlawful."

In *Wilson v. State*, Okl.Cr., 458 P.2d 315 (1969), paragraph No. 3 of the Syllabus by the Court stated:

"The use of the term 'probable cause' or 'reasonable cause' itself imports that there may not be absolute, irrefutable cause. If the facts are such that a reasonable, prudent man would have believed accused guilty, and would have acted upon that belief, a police officer is justified in making an arrest without warrant, although subsequent events prove that no offense has been committed, or if committed, that accused had no connection with it, where the statute authorizes arrest without warrant when the officer has reasonable grounds for believing that the person arrested had committed a felony, although not in his presence."

■ Officer Andrews was called to the tire store and was directed to the alley where he was met by two employees of the tire store who were standing near the defendant's station wagon: The defendant was in the station wagon when the officer arrived. One of the employees told the officer that he had seen defendant take a tire from a tire rack and drive away. The other employee informed the officer that he had pursued defendant and stopped him in the alley. The tire alleged to have been stolen was removed from defendant's station wagon by the officer. Upon these facts communicated to the officer by the store employees and the finding of the tire in the defendant's station wagon, we believe the officer had reasonable cause to believe defendant had committed a felony, and that a reasonable, prudent man in the officer's situation would have reached the same decision.

The defendant contends that the officer did not act in a reasonable manner for the reason that he only relied on the estimates of the store employees as to the value of the tire and did not make an independent evaluation. He states that a reasonable person could have seen from the condition of the tire that its value was less than $25.00 as asserted by the store employees. We disagree.

It was reasonable for the officer to rely upon the value of the tire as communicated to him by the store employees in order to believe that a felony had been committed by defendant. There is no requirement that an officer make an independent determination of the value of an item alleged to have been taken to justify a warrantless arrest. A police officer is not bound to show that a felony has actually been committed. *Nichols v. State,* Okl.Cr., 418 P.2d 77 (1966). *Battles v. State,* Okl.Cr., 459 P.2d 623 (1969). We therefore hold that this assignment of error is without merit.

In the defendant's fourth assignment of error, he contends that remarks made by the prosecutor in his final closing argument denied the defendant of a fair trial and equal protection of the law. The complained of remarks are as follows:

"One other thing I want to talk about. Mr. Pitman said you know what this man is charged with, petit larceny, but in this particular case it is a felony. If you convict him you are convicting him of a felony. And isn't that a terrible terrible thing.

"You must understand that the law in this case and the charge in this case applies to William Wayne Simmons and doesn't apply maybe to you and I. It applies to this man. And this is the law that fits his situation. If you and I did the same thing maybe it wouldn't fit our situations.

"The law that you have been instructed on it's his situation. *It's a felony for him to commit petit larceny.* (Tr. 156–157) (Emphasis added)

The defendant asserts that the prosecutor's remarks had the effect of creating the impression that the defendant had committed prior offenses, which were not in evidence.

In this regard, the State contends that the prosecutor's remarks refer to defense counsel's closing argument and were justified as a reply to such argument. In defense counsel's closing argument the statements alleged to have invited reply are as follows:

"You have two degrees of larceny. You have grand larceny then you have petit larceny. It says when the property taken is of a value exceeding twenty dollars. Two. When such property although not of value exceeding twenty dollars in value is taken from the person of another.

"Now you don't have that do you. This property wasn't taken off the person of an individual of any kind and it does not exceed the value of twenty dollars as by their Information they have alleged twelve dollars.

"Then it goes on and this small sentence composed of seven words larceny in any other cases is petit larceny. Now you go to the Information in this case and what have they alleged in this Information.

"There is one word that is in there three times, ladies and gentlemen, that may give you the very lead in which you might feel that you need.

"They have alleged in the very top of this that then and there being did then and there willfully, unlawfully and feloniously commit the crime of petit larceny. Feloniously. Then you get down in the bottom of this Information here and I am reading from a copy of the original.

"And on the third line down in that it says then and there willfully, unlawfully and feloniously take, steal and carry away. Feloniously. There it appears once more dealing with what. Petit larceny.

"Let's go on down there just a little further and they allege it one more time. Said defendant was with the unlawful, felonious and willful intent to appropriate same to his own use and benefit and to permanently deprive the said rightful owner thereof.

"Three times they have felonious in this Information. Yet they are charging pet-

it larceny. Not grand but petit larceny." (Tr. 151–152)

 This Court has held on numerous occasions that the right of argument contemplates liberal freedom of speech and counsel for both sides have the right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom, and it is only when argument by counsel for the State is grossly improper on some point which may have affected the defendant's rights that reversal can be based thereon. *Noble v. State,* Okl.Cr., 497 P.2d 452 (1972). We have closely examined the closing arguments of both the prosecutor and defense counsel in light of the issues raised in this assignment of error. We also note that at the outset of his closing argument, prior to any closing argument by defense counsel, the prosecutor stated to the jury:

"You know what you are to consider and the only thing you are to consider is what you have heard testified to under oath.

"There were only three witnesses that testified. Three. In reaching a verdict and in determining what the actual evidence in this case is you can consider only what those three people testified to under oath.

"Which means what I say isn't evidence, what I say is not evidence at all. The only thing I can do is talk about what those people testified to. That is all. What Mr. Pitman over here says isn't evidence either. What Mr. Pitman says isn't evidence either. And that is the most important." (Tr. 136–137)

 Although the prosecutor's remarks in question may be deemed to be improper in implying prior criminal acts of defendant not in evidence and also in placing the defendant in an unfavorable situation, we are of the opinion that they were made in reply to and prompted by the statements of defense counsel in his closing argument. In the sixth paragraph of the Syllabus to *Neel v. State,* Okl.Cr., 506 P.2d

936 (1973), this Court stated the following rule:

"Generally, remarks of the prosecuting attorney, including such as might or would otherwise be improper, are not grounds for reversal where they are invited, provoked, or occasioned by accused's counsel or in reply to or retaliation for his acts or statements."

The prosecutor had the right to correct a false impression or inference created by the statements of defense counsel in regard to the crime with which defendant was charged and to put such matter in proper perspective according to the instructions given by the trial court to the jury. *Gaddis v. State,* Okl.Cr., 447 P.2d 42 (1968).

Additionally, in viewing the entire record and the weight of evidence establishing the defendant's guilt in this case, we cannot say that the prosecutor's remarks were so grossly improper to have influenced the jury to return a verdict of guilty against the defendant. Therefore, we hold this assignment of error to be without merit.

We next consider the defendant's fifth assignment of error, and in so doing we include in our consideration the defendant's eighth assignment of error as they may be disposed of together. In assignment of error number five, the defendant contends that the trial court committed reversible error in submitting instructions Nos. 1, 2 and 3 to the jury in the first stage of the proceedings and by not submitting defendant's requested instruction No. 4 to the jury. In assignment of error number eight, defendant contends the trial court erred in submitting instructions Nos. 1 through 5 to the jury in the second stage of the proceedings.

In essence, defendant contends that the instructions in question misstated the applicable law as to petit larceny and the enhancement of punishment for conviction of petit larceny after former conviction of a felony. In both of these assignments of error the defendant incorporates the argument in his first assignment of error in

support of the contentions presented herein; such argument being that under the information the defendant was charged with petit larceny as a felony offense in reliance upon the Habitual Criminal Statute, 21 O.S., § 51.

We have examined the instructions in question and find they state the applicable law in the case as to the crime of petit larceny and the enhancement of punishment for conviction of petit larceny after former conviction of a felony. And, because we have already decided the defendant's first assignment of error was without merit, there is no need to consider further these two assignments of error which are based upon the arguments in the first assignment of error.

In his sixth assignment of error the defendant asserts that the trial court committed reversible error in allowing the prosecutor to amend page two of the information and by overruling the defendant's motion to strike page two.

Upon completion of the first stage of the two-stage proceeding in which the defendant was found guilty of petit larceny and prior to the commencement of stage two, the prosecutor moved to amend page two of the information as to the charge of a former conviction. The trial court allowed the prosecutor to amend the information to allege "petit larceny after former conviction of a felony" in place of the original allegation of "grand larceny." Except for this change, the District Court and case number of the former conviction remained the same, and correctly reflected the judgment and sentence entered against the defendant in such former conviction.

■ The defendant has raised an argument as to error by the examining magistrate in admitting the judgment and sentence referring to the alleged former conviction. However, we cannot consider this argument for the reason that the preliminary transcript is not part of the record on this appeal and, therefore, is not before

this Court for review. We are thus limited to consideration of the amendment to the information as it took place in the trial court.

■ It is the defendant's contention that the prosecutor was without authority to make the said amendment and the trial court could not grant the prosecutor leave to amend. This contention is without merit. Title 22 O.S., § 304, specifically provides that:

"An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial, unless for good cause shown by affidavit."

In regard to this statute, this Court has held on numerous occasions that an information may be amended after the trial has commenced by order of the court in matters of either form or substance where it can be done without prejudice to the substantial rights of the accused and without causing any delay in the trial. See, *Bowen v. State,* Okl.Cr., 497 P.2d 1094 (1972); *Pruitt v. State,* 94 Okl.Cr. 387, 236 P.2d 702 (1951); and, *Teague v. State,* 64 Okl. Cr. 369, 81 P.2d 331 (1938).

In light of the above authority we cannot say that the amendment in question altered the condition of the defendant to his injury. There is no basis to find that the substantial rights of the defendant were prejudiced or that the amendment caused a delay in the trial.

■ Further, we do not agree with the defendant's next contention that in allowing said amendment the charge was changed in substance thereby entitling him to a new preliminary examination and an opportunity to plead to said charge. In support of this contention the defendant, in essence, relies upon *Carter v. State,* Okl.

Cr., *292 P.2d 435 (1956)*, wherein this Court held:

"[M]otion to strike the allegation of former conviction from the information should be sustained, where such allegation was not contained in the preliminary complaint, no proof of such fact was made at preliminary hearing and the order directing accused to be held for trial in District Court contained no directive that would serve as a basis for such allegation. . . ." *292 P.2d at 440.*

The *Carter* case is clearly distinguishable from the case at bar. In *Carter*, the preliminary complaint filed against the defendant therein contained no allegation of a former conviction; however, the amended information filed in the District Court set out and alleged a former conviction. The court therein reasoned that it was improper to allow the State to use the prior conviction charge as an element of surprise. In the case at bar, the original information filed in the trial court contained an allegation of a former conviction against the defendant, and the amendment cannot be considered as a surprise to the defendant in the context that he was unaware that a previous conviction would be alleged in order to enhance his punishment.

The change occasioned by amending the information was to correct the charge from grand larceny to petit larceny after former conviction of a felony; all other factors relating to the former conviction remained the same. From this viewpoint the amendment cannot be considered to have substantially changed the charge of a former conviction in the second page of the information. Therefore, the defendant was not entitled to a new preliminary examination and the trial court did not err in allowing said amendment to the second page of the information and overruling the defendant's motion to strike page two.

■ In his seventh assignment of error, defendant asserts that the State, in the second stage of the proceedings, failed to prove petit larceny after former conviction of a felony and, therefore, the trial court

committed error by overruling defendant's demurrer to the evidence. The defendant contends that there was no competent evidence to show that he was represented by an attorney in regard to the offense alleged in page two of the information.

In examining the record we observe that it does not reflect defendant was represented by an attorney as to the prior conviction as required by *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). However, the Attorney General timely filed a motion to supplement the record with the appearance docket of the former conviction which reflects that the defendant was, in fact, represented by an attorney as to the former conviction. In *Scobie v. Page*, Okl.Cr., 481 P.2d 781 (1971), this Court stated that an appearance docket is competent evidence when properly certified to determine whether or not defendant was represented by counsel. Also see, *Campbell v. State*, Okl.Cr., 493 P.2d 1126 (1972); *Holt v. State*, Okl.Cr., 489 P.2d 504 (1971); and *Chester v. State*, Okl.Cr., 485 P.2d 1065 (1971). Accordingly, we conclude that competent evidence refutes the defendant's contention that his former felony conviction was defective due to the absence of counsel.

■ Additionally, defendant contends that the State had to prove two elements to sustain the allegation of petit larceny after former conviction of a felony as charged in page two of the information. He asserts that the State had to prove that he had formerly been convicted of petit larceny and that he had been formerly convicted of a felony. We agree with the former but not with the latter. To enhance the punishment of the defendant under the provisions of 21 O.S., § 51, it was only necessary that the State prove that the defendant had "been convicted of any offense punishable by imprisonment in the penitentiary." Title 21 O.S., § 51, specifically provides that a subsequent conviction of petit larceny can toll the statute to enhance the punishment thereunder. The judgment and sentence from the former

conviction of the defendant shows that he received a sentence of one year in the penitentiary. On this basis the judgment and sentence was sufficient proof that the defendant had been convicted of an offense punishable by imprisonment in the penitentiary for the purpose of enhancing his punishment.

The defendant's ninth and last assignment of error is based upon propositions which were previously considered in this opinion and which were decided against the defendant. Therefore, there is no need to comment on this assignment of error.

For all of the above and foregoing reasons, the judgment and sentence appealed from is, accordingly, *AFFIRMED*.

BRETT, P. J., concurs in results.

BLISS, J., concurs.