Ralph B. COOKS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–765.

Court of Criminal Appeals of Oklahoma.

Feb. 24, 1977.

Randy C. Parsons, Shawnee, Court-appointed, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Alan Foster, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Ralph B. Cooks, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Pottawatomie County, Case No. CRF–75–442, for the offense of Knowingly Concealing Stolen Property, in violation of 21 O.S.1971, § 1713. His punishment was fixed at three (3) years' imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Eddie Burr testified that on the evening of December 9, 1975, he was working traffic on Interstate 40 in Pottawatomie County, Oklahoma; that at approximately 9:00 p. m. he stopped a vehicle for speeding. He asked the driver to step back to the patrol car. The driver gave his name as that of the defendant. A passenger in the vehicle got out and walked back to the patrol car. The passenger gave his name as the true name of the driver, Anthony Taylor. The trooper discovered that the identities had been switched and ran a registration check of the vehicle. The check revealed that the vehicle was not registered under the name of "Cooks." He asked the driver, Anthony Taylor, to walk to the car with him to get the title. After looking at the title, the defendant advised him that the vehicle belonged to him. He asked the defendant to step out of the car and discovered a concealed weapon in the vehicle. He placed both the defendant and Taylor under arrest for carrying a concealed weapon. He radioed for a wrecker to have the automobile impounded. While waiting for the wrecker to arrive, he inventoried the contents of the vehicle. He opened the trunk and found a car telephone radio, four C.B. transceivers, and 8-track tape deck, a .38 caliber snub-nosed pistol, a green hunting coat, a letter jacket, and two cases containing cameras and camera equipment. He subsequently turned the items over to Detective Bob Horn. He asked the defendant if the merchandise was stolen and the defendant advised him, "he did not know that it was stolen, if it was." [Tr. 23] The defendant later stated, at the Sheriff's Of-

fice, that he had purchased the items for $250.00.

Officer Bob Horn of the Tulsa Police Department testified that he went to Shawnee on December 10, 1975, to assist in the identification of certain property that had been recovered by the Highway Patrol. He took possession of certain items and transported them to the property room of the Tulsa Police Department. At this point the parties stipulated as to the chain of custody of the property.

Bob Roberts testified that on December 9, 1975, he discovered that someone had broken into his automobile. Two 35 mm. cameras, assorted lens, two C.B. transceivers and other personal property were missing from the vehicle. He subsequently came to Shawnee and identified the cameras, camera equipment, C.B. transceivers, a hunting jacket and a letter jacket.

Brent Champion testified that on December 9, 1975, he discovered that his car and pickup had been broken into and a radio telephone and a .38 caliber pistol were missing. He subsequently observed the radio telephone about a week later in the property room of the Tulsa Police Department. The radio telephone was later returned to him by the defendant. He had a conversation with the defendant on January 21, 1976, at the Pottawatomie County Courthouse, at which time the defendant stated, "Damn, I was just trying to make a few extra bucks for Christmas." [Tr. 44]

Jess Blynn Ray, III, testified that he discovered his car had been broken into on the morning of December 9, 1975. A Southwestern Bell telephone unit had been removed from the vehicle. He next observed the telephone unit at the Tulsa Police Department, several days later.

Dan MaGehee testified that he was an investigator for the Pottawatomie County District Attorney's Office. He had a conversation with the defendant on December 11, 1975. The defendant was advised of his constitutional rights and that the conversation was being taped. Defendant stated that he had purchased the property from a

friend, and then asked him if he would turn off the recorder. Defendant stated, "you know how it is, I saw a chance to make a fast buck." [Tr. 48]

Defendant testified that he had purchased the radios and camera equipment from Robert Jones. Jones informed him that the items had been pawned to him and directed the defendant and Taylor where to pick up the items. He asked Jones if any of the merchandise had been stolen and Jones replied that it had not. He paid Jones $250.00 and Taylor was supposed to pay him 300 additional dollars. He purchased the property to resell it, thinking that he might make a small profit on it.

Bob Roberts was called in rebuttal and testified that the value of his property that was recovered was approximately from $3,000.00 to $4,000.00.

For his first assignment of error, the defendant urges that the trial court erred in overruling a Demurrer to the Information in that it was so vaguely drawn as to render it impossible for the defendant to prepare his defense. Under this assignment of error the defendant alleges two propositions. In addition to the proposition mentioned above, the defendant also complains that because of the vagueness of the wording of the Information, the court allowed evidence to be admitted in which it was impossible to tell whether or not it was relative to the case at bar. More specifically, he complains of admission into evidence of items found in the defendant's vehicle which were not specifically mentioned in the charging Information, to-wit: a C.B. transceiver and a Yashica camera.

■ We cannot agree with the defendant's contention in regard to the Information. The charge, as contained in the Information, states:

". . . that the said RALPH B. COOKS did unlawfully, wilfully, knowingly and feloniously, conceal from one Brent Crawford Champion, one Bob Lee Roberts, and one Jess Blynn, Jr., certain personal property of value, to-wit: one (1) AIMOR Brand 23-channel C.B. Radio, Serial number 102376, and one (1) Yashiki TL Elecrox .35mm camera, Serial number 2042456, and other camera equipment, that had prior thereto on the 9th day of December, 1975, been stolen from the said Brent Crawford Champion, Bob Lee Roberts, and Jess Blynn, Jr., the said defendant knowing or having reasonable cause to believe that said property was stolen did then and there unlawfully conceal and withhold said property from the owners thereof."

The test of sufficiency of an Information is whether it alleges every form of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and so defines and identifies the offense, that if convicted or acquitted, the defendant will be able to defend himself against any subsequent prosecution for the same offense. See, 22 O.S.1971, § 401(2) and *Simmons v. State,* Okl.Cr., 549 P.2d 111 (1976). Applying the foregoing test to the statute and case cited above, it is readily apparent to this Court that the Information under which the defendant was prosecuted herein meets all the test requirements.

■ We turn now to that portion of the defendant's first assignment of error in which he alleges that the trial court erred in admitting certain exhibits into evidence which were not specifically listed in the charging Information. The record reveals that several items were admitted into evidence which were recovered from the defendant's automobile at the time of his arrest and which were not specifically mentioned in the Information. The trial court admitted the exhibits under the theory that they were part of a "common scheme and design." In his brief, counsel for defense cites several cases where this Court ruled that in some instances it was error to admit evidence of other crimes as a part of the "common scheme or design" exception to the rule. However, these cases are distinguishable in that evidence of totally unrelated crimes, sometimes remote in time, was admitted over the objection of defendant. However, such is not the case here. The

exhibits to which defendant objects were all of similar character and nature and were seized simultaneously with the items which ultimately formed the basis of the charging Information. See, *Cornelius v. State,* Okl. Cr., 438 P.2d 295 (1968); *Morrison v. State,* Okl.Cr., 407 P.2d 998 (1965); and *Vanderpool v. State,* Okl.Cr., 501 P.2d 871 (1972). We, therefore, find this assignment of error to be without merit.

■ Defendant next asserts that the testimony regarding defendant's request that a tape recording not be made of his comments during pretrial questioning constituted a comment on defendant's right to remain silent. Defendant cites as authority *Buchanan v. State,* Okl.Cr., 523 P.2d 1134 (1974) and *Brown v. State,* Okl.Cr., 541 P.2d 242 (1975), which hold that comments at trial upon an appellant's failure to make a statement prior to trial, violates his right to remain silent from the moment he becomes a suspect and constitutes fundamental error. We are of the opinion that the instant case is clearly distinguishable from the above cited cases. In the instant case defendant did not remain silent, but rather asked the District Attorney's Investigator if he would turn off the tape recorder. The defendant thereafter made the following statement, "you know how it is, I saw a chance to make a fast buck." [Tr. 48] We, thus, conclude that such does not constitute a comment upon defendant's right to remain silent.

■ Defendant asserts, in the third assignment of error, that the trial court erred by allowing testimony to be given concerning his arrest for carrying a concealed weapon. We disagree. The evidence of the concealed weapon was properly admitted as to the circumstances concerning the initial arrest of the defendant. In *Miles v. State,* Okl.Cr., 554 P.2d 1200 (1976), we stated:

"In the present case the evidence complained of was the very thing which aroused suspicion and prompted an eye witness to call the police which resulted in the subsequent investigation culminating in the arrest of the defendant for the offense for which he is now charged. It

is the opinion of this Court that the evidence complained of was clearly admissible as showing an entire transaction, the sequences of which tended to throw light on the subsequent commission of the crime for which the defendant is charged. . . ."

■ Defendant next contends that the trial court erred in allowing tangible objects to be taken from the defendant without a valid search warrant or incident to a lawful arrest. We again must disagree. The vehicle was legally stopped for the offense of speeding. The concealed weapon was discovered while Trooper Burr was attempting to rectify the conflicting statements of the occupants as to the ownership of the vehicle. Defendant and the driver were then placed under arrest and the vehicle was inventoried prior to the arrival of a wrecker. In *Bennett v. State,* Okl.Cr., 507 P.2d 1252 (1973), wherein a similar inventory search was conducted, we stated:

"In this case, the arrest of each defendant was made as prescribed by statute, in that, the officers observed the commission of misdemeanors in their presence. One, the improper lane change, and two, that of interfering with a police officer. After arrest, it then became necessary for the officers to impound the vehicle in question for two reasons:

"(1) The officers were on duty as motorcycle policemen, and having arrested the defendants, needed to transport them to police headquarters. They also called a wrecker to transport the car for impoundment so that it would not imperil traffic or expose the vehicle and its contents to unauthorized persons.

"(2) The ownership of the vehicle had been put in question by the conflicting statements of its ownership by both defendants, to the extent that the vehicle might have been the subject of larceny.

"These *'specially attended circumstances'* warranted impounding of the vehicle and the *'good faith'* inventory search incident

thereto was justified by the circumstances. The search and seizure of the vehicle was reasonable and not in violation of the defendants' constitutional rights against unreasonable searches." [Emphasis original]

■ Defendant generally asserts, in the final two assignments of error, that the evidence was insufficient to support a conviction for the offense of Concealing Stolen Property. We are of the opinion that these assignments of error are without merit. The evidence adduced on behalf of the State showed that defendant was in possession of recently stolen property. The evidence further adduced that the defendant informed Trooper Burr, at the Sheriff's Office, that "more than likely the stuff was stolen." [Tr. 24] Defendant testified that he had purchased the property from Robert Jones and had no knowledge that the same was stolen. Under such circumstances the question of whether defendant concealed the property with guilty knowledge that it was stolen was properly admitted to the jury. See, *Davie v. State,* Okl.Cr., 414 P.2d 1000 (1966) and *Tate v. State,* Okl.Cr., 544 P.2d 531 (1975).

In conclusion, we observe that the record is free of any error which would require reversal or justify modification.

The judgment and sentence is, accordingly, *AFFIRMED.*

BLISS, J., concurs.

BRETT, J., concurs in results.